BOWLES, Administrator, Office of Price Administration, v. GULF REFINING CO.

No. 21749.

District Court, N. D. Ohio, E. D.
June 14, 1945.

**150**

William B. Pecsok, of Cleveland, Ohio, for plaintiff.

Howell, Roberts & Duncan, of Cleveland, Ohio, for defendant.

LEDERLE, District Judge.

1. This is an action brought in accordance with the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix § 901 et seq., in which the plaintiff, Chester Bowles, Administrator of the Office of Price Administration, seeks an injunction and treble damages according to the provisions of that Act. It is conceded that the defendant, The Gulf Refining Company, hereinafter referred to as "Gulf", is a Delaware corporation, with its principal offices located at Pittsburgh, Pennsylvania, and that it has throughout the country various selling units in accordance with the definition promulgated by the Administrator of the Office of Price Administration. Defendant has an establishment within this District where it transacts business. The case was tried to the court and at the close of plaintiff's case, the defendant moved for a dismissal. In accordance with Bach v. Friden Calculating Machine Co., 6 Cir., 1945, 148 F.2d 407, these findings and conclusions are being made.

2. For a number of years prior to 1942 the defendant had furnished a particular type of commodity called Ink Oil No. 4 to the Howard Flint Ink Company, a Michigan corporation, hereinafter referred to as "Flint," whose principal place of business was located in Detroit, Michigan. Flint used the oil in manufacturing printer's ink.

3. In December, 1941, a written contract was entered into between Gulf and Flint providing for Gulf to sell and Flint to purchase Ink Oil No. 4 for the year 1942. This contract became effective January 1, 1942, and expired by its terms on December 31, 1942. The contract provided for the delivery of approximately 1,900,000 gallons of this product at certain unit prices per gallon. The unit prices varied from 10.4 cents for oil going to Denver to 6.7 cents for oil going to New Orleans. The contract also indicated the shipping terminals from which shipments to the various points were to be made. The shipments to Detroit were to be shipped from Girard Point, Pennsylvania. The contract specifically provided: "The above prices are F.O.B. shipping terminals indicated with freight allowed to the respective destinations, as follows"—and then are enumerated the various shipping points for the various units. The unit price fixed for Detroit shipments was 9.4 cents. The contract also provided for the place or office of Gulf to which notice for shipment was to be sent. The reason for the variation of specified prices of the same material of the same quality shipped to different points was a variation in the freight to the different points.

4. On or about April, 1942, Gulf was no longer able to ship the product to Girard Point, Pennsylvania, for the reason that tankers formerly used for that purpose were taken over by the Government in connection with the prosecution of the war. Thereupon Gulf notified Flint that if Flint desired to purchase any more of this product for Detroit, it would have to be purchased from the Port Arthur, Texas, selling unit as the supply at the Girard Point unit was exhausted.

5. During the months of July to December, 1942, inclusive, Gulf shipped to the plaintiff a number of carloads of this product and adjusted the price computations therefor to take care of the increase in freight.

6. Gulf shipped all oil freight collect to Flint. The freight was at all times paid by Flint directly to the railroad. In this trade it had become the custom, followed by Gulf and Flint, to include the freight charges in the invoice and then, in turn, credit Flint with the freight charges, and the only payment made to Gulf was a payment by Flint of the sale price for the product at the point of sale, called "netback."

7. None of the impugned sales involved in this case originated at Girard Point, Pennsylvania. They were all sales made at Port Arthur, Texas, from July to December, 1942, inclusive. Except for plaintiff's Exhibit 1, the contract heretofore referred to between Flint and Gulf, no evidence was offered as to the highest price for which this product was sold at the Port Arthur unit during March, 1942, which is the base period. That contract indicates an agreement to sell oil going to Denver at the rate of 10.4 cents per gallon. It is conceded that the sales involved in this case would figure at 10.4 if the theory is adopted that sale price was price of oil plus cost of freight.

8. Some of the Gulf bookkeeping and billing for the Flint dealings was handled at defendant's Toledo, Ohio, office, and plain-

tiff contended that this transformed the sales in question into sales from Toledo, Ohio. If the plaintiff's contention is correct, that the sales took place at Toledo, Ohio, then that was the selling unit of Gulf. There is no evidence as to the highest sale price at that Toledo selling unit during the base period.

9. It is obvious from the contract, Exhibit 1, and such other evidence as was received in this case, that both Gulf and Flint understood that the invoice price was sales price with the cost of delivery from the shipping terminal to the point of delivery indicated as paid by Flint direct to the railroad. It is apparent that the matter was fully understood between Flint and Gulf, and the freight was in all instances paid by Flint and it, in turn, remitted only the selling price for the product of the shipping terminal, which was referred to in the record as the "net back".

10. Plaintiff has failed to sustain the burden of proof that the sales made by the defendant involved in this proceeding were above the ceiling price for the selling unit at which the sales were made. The Emergency Price Control Act specifically provides that it shall not be so administered as to change the usual method of transacting business in any line of commerce.

### Conclusions of Law.

1. Where, as here, a corporate defendant regularly transacts business in this District, this court has jurisdiction of this suit, involving a claim for treble damages and injunctive relief as a result of defendant's sale of oil at an allegedly excessive price to a purchaser who bought for use or consumption in the course of its trade or business, instituted by the Administrator of the Office of Price Administration, an officer of the United States authorized by law to sue. 28 U.S.C.A. § 41(1); 50 U.S.C.A. Appendix § 925(a) (c) and (e).

2. This action having been instituted within one year of each of the impugned sales, the action is timely. 50 U.S.C.A. Appendix § 925(e).

3. Where, as here, the Administrator of the Office of Price Administration fails to prove the highest price at which a seller has sold its product during March, 1942, the Administrator has failed to establish the maximum price or ceiling at which a seller can sell his product under General Maximum Price Regulation issued April 28, 1942, 6 F.R. 3153.

4. The burden of proof is upon the Administrator of the Office of Price Administration, in challenging a sale as being above the seller's ceiling, to prove what the ceiling is, and where, as here, this was not done, there is no basis for a finding that the seller has violated the General Maximum Price Regulation issued April 28, 1942, 6 F.R. 3153.

5. Plaintiff having failed to prove that defendant sold a product at a price higher than the applicable maximum, it follows that defendant's motion must be granted. Accordingly, judgment is being entered simultaneously herewith, dismissing the complaint.